Eanney, J.
At the June term, 1852, of the court of common pleas for Jefferson county, the plaintiff in error was indicted, tried, and convicted of the crime of robbery, and sentenced to the penitentiary for the term of five years. This sentence being removed by writ of error, to the district court sitting in the same •county, was affirmed; and the present writ is prosecuted to reverse the judgment of the latter court, as well as the judgment affirmed by it. The errors assigned relate to the action of the court upon the trial, in the admission of testimony objected to, and in instructions given to the jury; and to the sufficiency of the indictment.
By the bill of exceptions, it appears that the state gave evidence tending to prove that the prisoner, in the night time, entered the dwelling-house of Eobert Morton, named in the indictment, armed with a bowie-knife and sledge-hammer, there being in the house, at the time, said Morton, his wife, and a daughter, and threatened to kill them, and put said Morton in great bodily fear and danger of his life. The prisoner then demanded his money, and ordered him to get up and light a candle and get it. The prosecutor and his wife then went to a secretary in the same room, and his wife took from a drawer the two bank bills named in the first count of the indictment, and, while in the act of handing them to her husband, they were snatched by the prisoner and put in his pocket. He then proceeded to rifle the drawers of the secretary and took therefrom between fifty and sixty dollar’s in bank bills and coin, and departed. This evidence was objected to upon the ground that it did not tend to show a taking from the person of Eobert Morton; but the objection was overruled and the testimony admitted. The •court were then requested, by the prisoner’s counsel, to charge the jury that, under the Ohio statute, defining robbery, it is necessary *that the state should prove an actual severance from the person, of the property described in the indictment, and that there can be no constructive taking from the person. The court gave this in charge as the law, with this qualification : “ In order to consummate the offense, it is not necessary that the property should be actually taken from the person of Eobert Morton, the individual named in the indictment. It is enough if the property was in his *365 presence and under his immediate control, and he was- put in fear by the defendant, and while the property was so in his presence, and under his immediate control, and he laboring under such fear, the property was taken by the defendant.” It is evident the admission of the testimony and the charge raise the same question; and it is this: “Is an actual severance from the person, of the property taken by violence or putting in fear, an indispensable ingredient in the crime of robbery, as defined by our statute? The-statute is in these words: “ If any person shall forcibly and by violence, or by putting in fear, take from the person of another any money or personal property of any value whatsoever, with intent to steal or rob, every person so offending shall be deemed guilty of robbery, etc.” It is conceded that the circumstances proved would have constituted robbery at the common law ; but it is insisted that-our statute must receive a narrower construction, and that an actual taking from the person must be proved, to come within its provisions. And this argument is based upon the long established rule,, that penal statutes are to be construed strictly, and can not be extended beyond the terms used, to cover cases falling within their-spirit, and of equal atrocity. While this rule is recognized as well established and entirely sound in principle, we are not at liberty to disregard another equally well settled ; that words are to be understood in the sense in which they are used. If legal words are used, we are to understand them in the recognized legal sense; and so of terms of art or science; the object of all construction being to arrive at the intention of the legislature. In penal statutes, we are not at liberty to depart from the *words employed; but we are bound to ascertain the fair meaning of those words, in view of the sense in which they are used.
On recurring to the common law definition of this crime as laid down in Hale, Hawkins, and Blackstone, works of acknowledged authority, we find the legislature have incorporated it almost literally into the statute. What is the irresistible implication? Plainly that they were used in the legal sense, and with the settled construction placed upon them. What this construction was is not doubted, and is thus stated by Justice Blackstone: “And so-it is, whether the taking be strictly from the person of another or in his presence only; as, where a robber, by menaces and violence, puts a man in fear, and drives away his sheep or his cattle before his face.” 4 Com. 243. That this arose from the construction of: *366 -the words, and not as a part of the definition of the crime, appears from the opinion of Lord Mansfield, in Donelly’s case, 1 Leach, 229 ; S. C., 2 East P. C. 715, where it is said: “The true nature and original definition of robbery was a felonious taking of property from the person of another by force, in which there were three things to be observed—first, that it must be done feloniously, which went to the intent of the taker; secondly, that it must be taken from the person of another; thirdly, that it must be taken by force. That all the rest that was to be found in the books on this subject formed no part of the definition of the offense, but arose from legal construction, in order to prevent an evasion of the law.” As, “if the owner threw down his money, or had it not about his person at the time, though it were in his presence; these, by construction, have been holden to be equivalent to an actual taking from the person.”
It thus appears that the well settled legal meaning of the words, at the time they were taken from the common law and carried into the statute, were exactly as comprehensive as that put upon them by the court below; and we are of opinion it would be doing violence to the words, as well as the obvious intention of the legislature, to'give them a more Restricted application, while it would render the statute entirely impotent for the punishment of the greatest offenders.
It is unnecessary to consider any but the objections made to the -first count of the indictment. If that is good, it is clearly sufficient to sustain the judgment. The first exception taken to this count is that the bank notes alleged to be taken are not goods, chattels, or property having intrinsic value, and that this section of the statute does not include them as subjects of robbery. The words -of the statute are “money or personal property of any value.” 'That bank notes are not money is certain; but we think they are included, as well as other choses in action, in the general terms “personal property.” All property is divided into real and personal, 2 Black. Com. 16; and personal property is divided into property in possession and property in action, 2 Id. 388, “ or such where a man hath not the occupation, but merely a bare right to ■ occupy the thing in question, the possession whereof may however be recovered by a suit or action at law; from whence the thing so .recoverable is called a thing, or chose in action.
But this conclusion is rendered entirely decisive when the sec- *367 lion is read in connection with the 19th section of the same act, which provides, “That if any person shall steal or maliciously and feloniously destroy any bank bill or bills, or promissory note or notes, bill of exchange, order, receipt, warrant, draft, check, or 'bond given for the payment of money, or receipt acknowledging the receipt of money, or any other property, of the value of thirty-dive dollars or upward, knowing them to be such,” etc., “ such person shall be deemed guilty of,” etc. Swan’s Stat. 233.
Now, as we have no commo law offenses, the conclusion is irresistible that the legislature, wnen it used the word “ steal,” in the ' section punishing robbery, referred to stealing as defined by the ■same act; and that, as we have seen, included bank bills and other -choses in action.
*lt is next objected that the indictment does not aver an intent to steal the bank notes, or that the accused knew their character. It is true the count does not contain these averments ; but it describes the property in the language of the section on which it was founded, and avers the notes to have been actually stolen. We are of opinion this is sufficient, and that the actual stealing necessarily includes all the ingredients to make it such, embracing the intent and a knowledge of the character of the property taken.
Another objection is taken to this count—that it does not sufficiently aver the bank-bills to have been the property of Robert Morton. It contains a full description of the bills, and avers the value of each, and then adds, “ of the moneys, goods, and chattels of the said Robert Morton.” These words, it must be admitted, were inaccurately used. The bank bills were neither moneys, goods, nor chattels. But it was impossible that this inaccuracy should mislead or prejudice the accused, as the property stolen was fully described, and the state was confined in the proof of such description. The property thus described was called by a wrong name, but it did not in the least make uncertain the description already given. Nor are these words essential to the indictment; they may therefore be stricken out as surplusage, without any prejudice whatever to the count.
When this is stricken out, a full and accurate description of the property stolen will remain, and a sufficient averment that it belonged to Robert Morton.
Let the judgment be affirmed. Judgment affirmed.